FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 10 2014 ★
BROOKLYN OFFICE
Rec'd 7/14/14 km

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

UNITED STATES OF AMERICA,

-against-

ANTHONY MAYES, JR. and
ANTOINE MAYES,

      Defendants.

------------------------------------------------------------ X

12-CR-385 (ARR)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

On May 13, 2014, following a jury trial before this court, defendants Anthony Mayes, Jr. and Antoine Mayes were convicted of thirteen charges, including racketeering, unlawful use and possession of firearms in connection with the racketeering offense, and violent crimes in aid of racketeering. Both defendants have filed motions for a judgment of acquittal under Federal Rule of Criminal Procedure 29 and for a new trial under Federal Rule of Criminal Procedure 33. For the reasons set forth below, the motions are denied.

**STANDARD OF REVIEW**

I. **Rule 29**

Under Rule 29, a defendant can move for a "judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In deciding a Rule 29 motion, the court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Espaillet, 380 F.3d 713, 718 (2d Cir. 2004) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "[T]he court may enter a

1

judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999) (internal quotation marks and citation omitted).

"[C]ourts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003). The court must credit "every inference that the jury might have drawn in favor of the government," United States v. Temple, 447 F.3d 130, 136-37 (2d Cir. 2006) (internal quotation marks omitted), and "may not substitute [its] own determinations of credibility or relative weight of the evidence for that of the jury," United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000). Accordingly, a defendant seeking a judgment of acquittal on the ground that the evidence was insufficient "bears a heavy burden." United States v. Finley, 245 F.3d 199, 202 (2d Cir. 2001).

## II.  Rule 33

Rule 33 provides that a court may vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). While the rule grants broad discretion to the district court, that discretion must be exercised "sparingly," and relief under the rule should be granted "only with great caution and in the most extraordinary circumstances." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992). The court should only grant a new trial if, based on the record as a whole, the court does not find "competent, satisfactory, and sufficient evidence" to support the jury's verdict of guilt beyond a reasonable doubt. Id. In making this determination, the court must defer to the jury's credibility determinations unless the court finds "exceptional circumstances." United States v. McCourty, 562 F.3d 458, 475 (2d Cir. 2009). "The

ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001). "There must be a real concern that an innocent person may have been convicted." Sanchez, 969 F.2d at 1414.

## DISCUSSION

The court assumes the parties' familiarity with the proceedings at trial and will discuss only the evidence relevant to the resolution of the instant motions.

### I. Count One: Racketeering

Under Count One, both defendants were convicted of violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).[1]

Both defendants assert that the government failed to introduce evidence at trial sufficient to prove a violation of the RICO statute. Specifically, they challenge the sufficiency of the evidence with regard to two of the required elements: the existence of an enterprise and a pattern of racketeering activity. They assert that the court should vacate the judgment of conviction on Count One and the other counts that are predicated on the existence of a racketeering enterprise.[2]

---

[1] The defendants were charged under a fourth superseding indictment, Dkt. #115. Following the handing down of this indictment, but prior to trial, the court granted the government's motion to dismiss two counts of the indictment without prejudice. Prior to the case being submitted to the jury, the court granted the government's motion to dismiss several of the charged racketeering acts. Accordingly, to avoid confusing the jury, the court renumbered the counts and racketeering acts in the jury charge and verdict sheet. In this opinion, the court will refer to the counts using the numbers presented to the jury, not the numbers listed in the superseding indictment.

[2] Specifically, Anthony Mayes argues that the court should vacate the convictions on Count Three (charging Anthony Mayes with the murder of David Martin in aid of racketeering) and Count Four (charging both defendants with conspiracy to commit murder in aid of racketeering). Antoine Mayes argues that the court should vacate the

A.  **Existence of Enterprise**

Defendants' primary argument on their post-trial motions is that the government failed to present sufficient evidence to prove the existence of the charged racketeering enterprise beyond a reasonable doubt.

The RICO statute defines an "enterprise" as, inter alia, "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The government must prove the existence of an enterprise "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981). To prove that an enterprise is "associated in fact" within the meaning of the RICO statute, the government must show that it has "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, 556 U.S. 938, 946 (2009). However, an enterprise can function as a "continuing unit" even if the membership changes during the period charged. See United States v. Eppolito, 543 F.3d 25, 49 (2d Cir. 2008) ("An . . . enterprise may continue to exist even though it undergoes changes in membership."); United States v. Coonan, 938 F.2d 1553, 1560-61 (2d Cir. 1991), cert. denied, 503 U.S. 941 (1992) ("[T]he evidence clearly established that, regardless of internal disputes and membership changes, the [group's] power structure endured and its members functioned as a unit."). Moreover, a group does not need to have a "hierarchical structure or a 'chain of command'" in order to constitute an enterprise, and "different members may perform different roles at different times." Boyle, 556 U.S. at 948.

---

convictions on the following counts: Count Two (charging both defendants with unlawful use and possession of firearms in furtherance of the racketeering offense charged in Count One); Count Four; Counts Five, Seven, and Nine (charging Antoine Mayes with attempted murder in aid of racketeering); and Counts Six, Eight, and Ten (charging Antoine Mayes with unlawful use and possession of firearms in furtherance of the attempted murders charged in Counts Five, Seven, and Nine).

In this case, the government alleged that, between approximately January 1998 and June 2010, the defendants were leaders and members of the "Mayes Brothers Enterprise," which was "a gang comprised primarily of individuals residing in and around Brooklyn, New York; Williamston, North Carolina, and elsewhere . . . [who] engaged in drug trafficking, promoting prostitution and acts of violence, including murder, attempted murder, arson, robbery and assault." Fourth Superseding Indictment, Dkt. #115, ¶ 1.

Defendants argue that the evidence at trial failed to establish the existence of a single racketeering enterprise spanning the twelve-year time period between 1998 to 2010, as charged by the government. Rather, both defendants argue that the evidence showed, at best, two distinct locations of criminal activity. One group of cooperating witnesses testified that they sold drugs with Anthony Mayes in Williamston, North Carolina, while other cooperating witnesses testified that they sold drugs with Antoine Mayes in East New York, Brooklyn, as part of a group that called themselves the Cashford Boyz. Defendants argue that the evidence showed that the groups in North Carolina and New York each had their own personnel, territory, and customers. Therefore, Anthony Mayes argues, "the evidence at trial showed nothing more than several separate, distinct and disorganized groups of young men who sold drugs from various locations, not a well-defined organization with the requisite continuity or structure to constitute an enterprise." Anthony Mayes Mem. of Law, Dkt. #207, at 5. Antoine Mayes argues that the evidence may have supported a finding of two separate drug trafficking organizations in North Carolina and Brooklyn, or, alternatively, a "far narrower" enterprise between 2008 and 2010 when both defendants lived together in East New York. Antoine Mayes Mem. of Law, Dkt. #208, at 12. Either way, both defendants argue, the government did not prove the existence of the unified twelve-year enterprise charged in the indictment.

5

Contrary to the defendants' assertions, the government presented overwhelming evidence at trial from which a reasonable juror could find the existence of the charged enterprise. To be sure, the evidence did not show that the defendants' associates in North Carolina and New York worked together within a single, integrated organizational hierarchy or even that they all knew each other. The law is clear, however, that the government does not need to demonstrate a fixed membership or single chain of command in order to satisfy the continuity requirement for an enterprise. Rather, the evidence amply demonstrated that the various members were connected as an "ongoing organization" and "continuing unit," Turkette, 452 U.S. at 583, through two individuals: the defendants, who traveled frequently between East New York and Williamston, jointly engaged in criminal activities in both locations, and jointly directed others to commit crimes in furtherance of the organization.

As the government sets out in its brief, the evidence showed that the defendants linked the activities in Williamston and East New York into a single interstate drug and gun trafficking operation. Multiple cooperating witnesses testified that they took trips with Anthony Mayes to buy large quantities of drugs in New York and transport them back to North Carolina for resale. Opp'n 4. In the other direction, cooperating witness Don Johnson testified that he and Anthony Mayes transported "close to 20" guns from North Carolina to East New York and sold them to "[p]eople around that neighborhood that he [Anthony Mayes] dealt with." Tr. 483.

Multiple witnesses testified that the defendants jointly engaged in and supervised drug trafficking activities in both locations. For example, cooperating witness Taria Woolard testified that Antoine Mayes and a man named "Smoke" (identified by other witnesses as Frank Cook) came down from New York to North Carolina to sell drugs with Anthony Mayes. Id. at 2024-25. She testified that Antoine and Anthony Mayes sold drugs in the same location in Williamston,

North Carolina, had the same supplier, and shared customers. Id. at 2026. Likewise, Johnson testified that on trips to New York with Anthony Mayes, he observed the defendants cook, package, and sell drugs together. Id. at 480. Johnson also testified that Antoine Mayes would help Anthony Mayes locate drug suppliers in New York and that Anthony Mayes would sometimes split the drugs with Antoine Mayes. Id. at 479-81. Cooperating witness Khalik Shaw, an associate of the Cashford Boyz, testified that Antoine Mayes and Anthony Mayes both supplied him with drugs to sell in East New York. Id. at 1526. When asked how he would know which brother to contact for drugs, Shaw replied, "It wouldn't make a difference. I would call one and maybe if he wasn't there the other one would send me to the other one." Id. at 1527.

The cooperating witnesses also testified about numerous occasions when the defendants jointly carried out or ordered others to carry out acts of violence, in both New York and North Carolina, to maintain their authority over their associates and to inspire fear in rivals. For example, Johnson testified about multiple acts of violence that he committed with Anthony Mayes in Williamston. He also testified about an occasion when Anthony Mayes directed him to go to New York, then Antoine Mayes drove him to Atkins Street and ordered him to shoot a man in a red hooded sweatshirt. Id. at 545-46. Johnson followed Antoine Mayes's instructions and fired fifteen or sixteen shots into a crowd of people. Id. at 548-49. Johnson testified that he did not know the man in the red sweatshirt and that he did the shooting "[b]ecause he [Antoine] asked me to." Id. at 552. Through other testimony, the government demonstrated that the man in the red sweatshirt was Travis Timmons and that the shooting was part of an ongoing violent dispute in East New York between the Cashford Boyz and a rival group on Atkins Street. As this evidence showed, even though Johnson was not a member of the Cashford Boyz, he committed an act of violence on their behalf at the direction of both defendants.

In his reply, Antoine Mayes argues that all of these examples are insufficient to prove the existence of the charged racketeering enterprise. Antoine Mayes Reply, Dkt. #212. As he argues, the defendants were brothers who were both engaged in drug dealing, so it is no surprise that they sometimes worked together. He argues, however, that the government cannot prove the existence of the charged enterprise based on "isolated, sporadic and very few instances when they jointly engaged in activities relating to drug dealing." Id. at 6. He also argues that the government failed to present evidence of certain features that might be expected of a joint enterprise. For example, he argues that the government did not adduce evidence that Antoine Mayes participated in the gun trafficking, that any drug dealers in North Carolina "answered to Antoine Mayes," or that the defendants shared sales. Id. at 3-4. These arguments, however, only suggest other possible inferences that the jury might have drawn from the evidence. On a Rule 29 motion, the court is "obliged to view the evidence in its totality and in the light most favorable to the prosecution, mindful that the task of choosing among permissible competing inferences is for the jury, not a reviewing court." United States v. Florez, 447 F.3d 145, 154-55 (2d Cir. 2006). Here, the government presented ample evidence from which a reasonable juror could infer that the defendants' joint activities were not "isolated [and] sporadic," but rather part of an ongoing organization.

Therefore, this case is distinguishable from United States v. Morales, 185 F.3d 74 (2d Cir. 1999), which Antoine Mayes relies upon in his brief. Antoine Mayes Mem. 32. In Morales, the defendants had been incarcerated for a seven-year period within the duration of the charged enterprise. The Second Circuit held that no rational juror could have found beyond a reasonable doubt the existence of the charged enterprise because "[t]he government did not present sufficient evidence to show that the enterprise continued during the seven-year period that the

defendants were incarcerated." Id. at 81. In this case, the evidence did not show any similar period of inactivity. Instead, the facts here are far more comparable to United States v. Burden, 600 F.3d 204 (2d Cir. 2010). The defendants in Burden alleged, just as the defendants do here, that the government had failed to prove the charged racketeering enterprise because "the evidence showed no more than a group of people who sold drugs together," rather than a "well-defined organization." Id. at 213-14. The Second Circuit rejected that argument, finding that a reasonable juror could have found the existence of an enterprise because the evidence showed the group had "multiple members who joined in the shared purpose of selling drugs and promoting such sales," a meeting place, and one member who acted as the head, "controlling the flow of cocaine and cocaine base, organizing acts of violence, recruiting members, and directing members' activities." Id. at 215.

Here, just as in Burden, the evidence at trial showed that associates in Williamston and East New York had a shared purpose of selling drugs, and Anthony and Antoine Mayes jointly "direct[ed] members' activities" in the two locations. The evidence supported an inference that the defendants together acted as the unifying link between the personnel and activities in Williamston and East New York, connecting the two locations as part of an interstate drug and gun trafficking organization that used violence to protect its territory and intimidate rivals. Accordingly, the government presented sufficient evidence from which a reasonable juror could have found the existence of the charged Mayes Brothers Enterprise beyond a reasonable doubt.

**B.     Pattern of Racketeering Activity**

In addition to challenging the sufficiency of the evidence to prove the existence of the charged enterprise, Anthony Mayes also argues that the government failed to establish the requisite pattern of racketeering activity.

9

To convict a defendant of a RICO offense, the government must prove that the defendant engaged in a "pattern of racketeering activity" consisting of at least two predicate racketeering acts. United States v. Minicone, 960 F.2d 1099, 1106 (2d Cir. 1992). "The racketeering acts must be related to each other ('horizontal' relatedness), and they must be related to the enterprise ('vertical' relatedness)." United States v. Minicone, 960 F.2d 1099, 1106 (2d Cir. 1992). The government must also prove that the racketeering acts "amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989). This "continuity" requirement refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Id. at 241.

In this case, the jury found that the government proved sixteen racketeering acts, some of which were charged against only one of the defendants and some of which were charged against both defendants. Anthony Mayes argues that the government failed to prove a pattern of racketeering activity because the charged racketeering acts were not related to any enterprise. Instead, he argues, "the evidence showed that the racketeering acts alleged in the indictment were attributable to various individuals, acting alone or with others, trying to settle personal disputes or 'beefs'." Anthony Mayes Mem. 5.

For the reasons already discussed, the government presented sufficient evidence for a reasonable juror to find the existence of the charged enterprise, an organization that engaged in drug trafficking in Williamston and East New York and used acts of violence to protect its operations. The racketeering acts that the jury found to be proved related to the charged enterprise because they involved either drug trafficking itself or acts of violence linked to the organization's drug trafficking activities. The government also presented sufficient evidence for

a reasonable juror to infer that the acts posed a threat of continued criminal activity, because the evidence showed repeated acts of drug trafficking and violence over a twelve-year period.

Accordingly, the defendants have not met their high burden to show that no reasonable juror could have found the existence of a RICO enterprise or a pattern of racketeering activity beyond a reasonable doubt or that no competent evidence exists to support the jury's verdict. Both defendants' motions for judgment of acquittal and to vacate the conviction under Count One are denied.

## II. Racketeering Act One and Count Three: Murder of David Martin

Defendant Anthony Mayes also seeks to vacate his conviction for the murder of David Martin in 1999, the offense charged in Racketeering Act One and Count Three.

Racketeering Act One charged Anthony Mayes with the murder of David Martin as a predicate act of the RICO enterprise charged in Count One. In order to show that predicate racketeering acts are vertically related to the enterprise, "the government must establish (1) that the defendant was enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) that the predicate offenses are related to the activities of that enterprise." United States v. Daidone, 471 F.3d 371, 375 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). "[I]t is not necessary that the offense be in furtherance of the enterprise's activities for the offense to be related to the affairs of the enterprise." United States v. Bruno, 383 F.3d 65, 84 (2d Cir. 2004).

In Count Three, Anthony Mayes was convicted of murdering David Martin "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity," in violation of 18 U.S.C. § 1959. To convict on this count, the government

must present sufficient evidence that the violent crime was "intended to <u>preserve</u> the defendant's position in the enterprise or to <u>enhance</u> his reputation and wealth within that enterprise." <u>United States v. Dhinsa</u>, 243 F.3d 635, 671 (2d Cir. 2001). However, "the Government is not required to prove that maintaining or increasing a defendant's position in the RICO enterprise was the defendant's sole or principal motive." <u>United States v. Pimentel</u>, 346 F.3d 285, 295 (2d Cir. 2003) (internal quotation marks and alteration omitted). Instead, the Second Circuit has "consistently held that the motive requirement is satisfied if the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." <u>Id.</u> at 295-96 (internal quotation marks omitted).

Anthony Mayes argues that the evidence at trial was insufficient to establish the existence of the charged enterprise at the time of David Martin's murder in 1999. He also argues that the government never established that the murder was related to drug trafficking or was anything more than a personal dispute. Therefore, Anthony Mayes argues, no reasonable juror could have found that the murder of David Martin was related to the enterprise, as charged in Racketeering Act One, or that it was committed for the purpose of maintaining or increasing his position in the enterprise, as charged in Count Three. Anthony Mayes Mem. 9-14.

While this is a closer question than the defendants' other sufficiency-of-the-evidence challenges, a reasonable juror could have found that the government proved a sufficient connection between the murder of David Martin and the charged racketeering enterprise. As the government outlines in its brief, the government presented both law enforcement testimony and medical records to establish that Anthony Mayes was stabbed in Brooklyn on January 16, 1999. Gov't Opp'n 10. Keisha Segar, Martin's girlfriend, testified at trial that she was aware that

Martin was having a "dispute" with "[a] guy named Bo [identified as Anthony Mayes] and his whole crew of people." Tr. 2300. Segar testified that she attended a party with Martin in East New York on June 18, 1999, where she saw members of Anthony Mayes's "crew." Id. 2301-02. Segar testified that she was leaving the party when she heard gunshots, and she returned to find that Martin had been shot and killed. Id. 2303. Based on this evidence, combined with other eyewitness testimony that placed Anthony Mayes at the party firing a gun, a reasonable juror could draw the inference that Anthony Mayes shot and killed Martin as part of the dispute between Martin and Anthony Mayes's "crew."

This evidence, when placed in the context of the other evidence that the government presented at trial, could convince a reasonable juror that the charged racketeering enterprise existed in its early stages when Anthony Mayes killed Martin. As Anthony Mayes correctly asserts, none of the cooperating witnesses testified about meeting Anthony Mayes or conducting criminal activity with him before the early 2000s. Anthony Mayes Mem. 9. Segar's testimony, however, demonstrated that Anthony Mayes operated as part of a "crew" in East New York as early as 1999. Other evidence at trial showed that, shortly after the Martin murder in 1999, Anthony Mayes fled to North Carolina and began a drug trafficking operation in Williamston. Meanwhile, his brother Antoine Mayes stayed behind in East New York and assumed a leadership role in the same area where Anthony Mayes had previously operated with his "crew." A reasonable juror could infer that all of these events were connected as part of the same enterprise led by Anthony and Antoine Mayes. In fact, the evidence supported an inference that the Martin murder played a critical role in the enterprise during its formative stages, since it prompted Anthony Mayes to relocate to North Carolina and create the two-state gun and drug trafficking operation that characterized the enterprise for most of its existence.

The government also presented enough evidence for a reasonable juror to draw the inference that Anthony Mayes committed the murder in order to rise to a leadership role in the charged enterprise. First, Anthony Mayes's later references to this murder shed light on his motive for committing it. As the government sets out in its brief, numerous witnesses testified that Anthony Mayes told them about the murder, either directly or by implication. Gov't Opp'n 11. The witnesses testified that Anthony Mayes gained respect from associates and rivals by making it known that he was willing to kill if provoked. For example, Taria Woolard testified that "[e]verybody" in Williamston knew Anthony Mayes as "the guy that's on the run for murder in New York," and based on this reputation "[t]hey were afraid of him." Tr. 2082-83. Anthony Mayes contends that the evidence showed that, "[i]nstead of taking credit for the shooting of David Martin as a badge of honor, Mr. Mayes laid low, left New York and denied any involvement in the shootings." Anthony Mayes Mem. 12. Clearly, though, the evidence would have allowed a reasonable juror to reach a different conclusion.

Second, the government presented significant evidence about the ways that members of drug trafficking organizations use violence to maintain or enhance their reputation. For example, Travis Timmons, a member of a rival group of drug dealers in East New York, testified that he participated in a murder at the age of 16 with a group of associates who were older than he was. Tr. 2678-80. After that murder, Timmons testified that he "gained a lot of respect" and that the older members of his group no longer treated him "like a little kid." Id. at 2680. Of course, Timmons could not offer any direct evidence regarding Anthony Mayes's motive for killing Martin. However, Timmons's testimony establishes that an act of violence can serve as a way for a younger member of a group to prove himself and rise to a higher level in an organization. A

reasonable juror could have drawn the inference that, by analogy, Anthony Mayes committed the Martin murder as a teenager in order to build his reputation among his group in East New York.

While the evidence of Anthony Mayes's motive is necessarily circumstantial, the court is required to view the evidence in the light most favorable to the prosecution and credit every inference the jury may have drawn in favor of the government. Under this standard, a reasonable juror could have found that Anthony Mayes committed the murder of David Martin during the formative stage of the charged racketeering enterprise. On Racketeering Act One, the jury could have found that the murder was related to the activities of the enterprise because overwhelming evidence showed that Anthony Mayes regularly used violence to maintain control over the enterprise. On Count Three, the jury could have inferred that Anthony Mayes committed the murder to increase his position in the enterprise, based on the way that he later referred to the murder to intimidate members and rivals, coupled with Timmons' testimony that a murder by a younger member of a group can play a critical role in helping that person gain respect. Therefore, Anthony Mayes's motions to vacate his convictions related to the Martin murder are denied.

### III. Count Four: Conspiracy to Commit Murder in Aid of Racketeering

Anthony Mayes also moves to vacate his conviction and for a new trial on Count Four, which charged both defendants with conspiracy to murder members of the rival Atkins Crew in aid of racketeering. He argues that the government failed to establish the existence of the enterprise or Anthony Mayes's membership in it, and therefore also failed to adduce sufficient evidence that the murder conspiracy was committed for the purpose of maintaining or increasing his position in the enterprise. Anthony Mayes Mem. 13. Similarly, in his motion, Antoine Mayes

15

also argues that the government failed to link the violence against the Atkins Crew with the charged enterprise. Antoine Mayes Mem. 13.

Defendants have failed to meet their burden to vacate their convictions or receive a new trial on the counts related to the violence against the Atkins Crew. Multiple cooperating witnesses testified at trial that Anthony and Antoine Mayes directed members of the Cashford Boyz in East New York to commit violent acts against Atkins Crew members by providing weapons, ordering associates to shoot, and, in Antoine Mayes's case, personally participating in shootings. Witnesses Khalik Shaw, Travis Timmons, and Simeon Hall all testified that the dispute began because the defendants' associates accused Atkins Crew member Dupree Gales of cooperating with police in a murder case against a member of the Cashford Boyz. This evidence was sufficient for a reasonable juror to infer that the defendants ordered the violence against the Atkins Crew to maintain their unity, to protect one of their associates, and to intimidate rivals from cooperating with the police against them.

Both defendants argue that if they were the leaders of the charged enterprise, as the government alleged, then they could not have committed violent crimes against the Atkins Crew to increase their position within the enterprise. Anthony Mayes Mem. 14; Antoine Mayes Mem. 12. In Dhinsa, however, the Second Circuit rejected the defendant's similar argument that "because he was the undisputed leader of the [charged enterprise], these violent crimes could not have been performed with the intent or maintaining or increasing his position within the criminal enterprise." 243 F.3d at 670-71. Instead, the court noted that the Second Circuit has "affirmed convictions under section 1959(a) for violent crimes committed or sanctioned by high ranking leaders of the enterprise for the purpose of protecting the enterprise's operations and furthering its objectives or where the defendant, as a leader within the enterprise, was expected to act based

on the threat posed to the enterprise and that failure to do so would have undermined his position within that enterprise." Id. at 671 (collecting cases).

Here, a reasonable juror could have inferred that an Atkins Crew member's potential cooperation with the police posed a threat to the enterprise, that the defendants, as leaders, were expected to act in response to that threat, and that their leadership would have been undermined if they failed to act. See id. at 672 (upholding conspiracy to murder and murder in aid of racketeering convictions where leader of enterprise "suspected that [the victims] were cooperating with the police and, therefore, posed a potential threat to the enterprise's operations"); United States v. Diaz, 176 F.3d 52, 95-96 (2d Cir. 1999) (upholding violent crimes in aid of racketeering convictions where evidence showed that defendant was responding to a "threat to the drug block" and that his failure to "protect the drug block's business" would have undermined his leadership role). Therefore, Anthony Mayes's motion to vacate his conviction on Count Four is denied.

### IV. Anthony Mayes's Pro Se Submissions

Anthony Mayes has also filed several pro se submissions in connection with the post-trial motions. Dkt. #209, 217. None of the arguments in those submissions alter the outcome.

For example, Anthony Mayes argues that his counsel should have relied on United States v. Jones, 455 F.3d 134 (2d Cir. 2006). In Jones, the Second Circuit upheld a RICO conviction for a defendant who led a "relatively structured RICO enterprise" whose lieutenants would obtain prepackaged drugs, deliver bundles to street-level dealers, and work eight-hour shifts for a salary. Id. at 144-45. In their brief, Anthony Mayes's counsel did in fact cite Jones and seek to contrast its facts with the facts of this case. However, for the reasons stated above, the

government is not required to prove an enterprise with the structure and hierarchy shown in Jones. Instead, the government presented sufficient evidence to establish the requisite informal structure and ongoing organization.

Anthony Mayes also argues that no witness testified that the murder of David Martin was for the purpose of maintaining or increasing position in an enterprise or committed in furtherance of an enterprise. But it is not necessary for a witness to testify specifically to that point; as discussed above, the government presented sufficient circumstantial evidence to allow a reasonable juror to draw the inference regarding the motive for the murder. Anthony Mayes also argues that no witnesses testified that an enterprise existed in 1998 in New York City, but his attorneys did make this argument on his behalf, and I found it unavailing for the reasons discussed above. Anthony Mayes raises a number of other specific factual challenges that relate to the witnesses' credibility or to the inferences to be drawn from their testimony, but the law is clear that the court may not substitute its judgment for that of the jury on a Rule 29 motion.

Accordingly, I have considered the pro se arguments submitted by Anthony Mayes and find no basis to alter the analysis or rulings set forth above.

## CONCLUSION

For the foregoing reasons, the defendants' Rule 29 motions for a directed verdict of acquittal and Rule 33 motions for a new trial are denied.

SO ORDERED.

/S/ Judge Allyne R. Ross
Allyne R. Ross
United States District Judge

Dated:	July 10, 2014
Brooklyn, New York

**SERVICE LIST**

Defendants

Anthony Mayes, Jr.
#65259-053
150 Park Row
New York, NY 10007

Antoine Mayes
#78351-053
150 Park Row
New York, NY 10007